## A. ATTERBURY v. J. M. BIGGERSTAFF.

1. Suit by payee of following instrument, against the maker : "December
   " 28th, 1861.   On or before the first day of June, 1862, I promise to pay
   " B. six hundred dollars, in stock cattle, at six dollars per head ; the
   " said B. to hunt, mark, and brand such of my·stock cattle as he can find
   " in my stock in F. and H. counties, to the amount of said sum of six
   " hundred dollars."   *Held*, that this instrument does not evidence a sale
   of cattle at its date, so as then to pass the property from the maker to·
   the payee.   The property in the cattle remained in the maker until they
   should be appropriated by the payee ; and if there was not, within the
   counties named, a sufficient number of the maker's specified stock to dis--
   charge the instrument, and the payee gathered all that he could gather
   by the exercise of ordinary diligence, and credited the instrument with
   their agreed price, then he was entitled to a monied judgment against
   the maker for the unpaid balance of the instrument.
2. *Quære :* If there had been enough cattle in the designated range to pay
   the whole debt, and the debtor interposed no obstacle to the gathering·
   of them by the payee, would the debtor be wholly exonerated of the·
   debt, or could he still be held liable for cattle equivalent to the debt ?

APPEAL from Fannin.   Tried below before the Hon. W. H.
Andrews.

The suit was commenced against Atterbury in his lifetime, but he died before the trial below, and his administrators were made defendants in his stead.

The principal facts are stated in the opinion, and the instrument sued on is set out in the head-note.

*V. W. Hale*, for the appellant. This, we submit, is not a money note, which may be discharged on or before a day certain, in property; but it is a note payable *in specific property* therein named, *at a fixed price*, and that property delivered (stock in the range) *at the time*, and all that defendant's intestate had to do in the matter was done; the bargain was struck, and the burden of hunting, marking, and branding, as well as separating the cattle from the other cattle of defendant's intestate, was, by the express terms of the contract, made the duty of plaintiff. In such a case the property and right of possession at once passed to the purchaser, and was at his risk from that time, provided, only, the cattle were there. (Chitty on Contracts, top pages 374 to 377 inclusive, and Notes.) And, being cumbersome and bulky articles, they were delivered on their range, and placed at once at the purchaser's risk. (See Parsons on Contracts, Vol. I., 5th Ed., 536, 534.)

. A sale of chattels, as in this case, may be valid and pass the property to the purchasers, although both payment and delivery, or either, may be postponed to a future day; in which case no earnest is necessary. (Id. 519.)

Upon a completed sale, the property in the thing sold passes to the purchaser; one of these things implies the other; if the property passes, the sale is complete; if the sale is complete, the property passes. (Id. 525, 526.) And if the property passes, though not the possession, nor even the right of possession, and the thing sold perish, the loss falls on the purchaser. In this case, by the very terms of the contract, in writing, the property passed at the date of the contract sued on; and if the cattle were in the range desig-

nated in the contract, ready for him, and he fails to call and get them, the loss falls on him. (Id. 535.)

The reasons and equity are apparent, for the courts judicially know that at the time these cattle were to be gathered the war was going on, the Estray laws suspended, and stock under such circumstances scattered; and it is fair to presume that on account of the sale and delivery (in the range) to plaintiff, the defendant's intestate was caused to pay no further attention to the cattle, and hence they were lost.

A note for a given amount which may be discharged at maturity, or any other stipulated time, in property, becomes a money demand at the expiration of that time, if not paid in property; but an obligation to pay a certain number of cattle, or a certain quantity of any commodity, in discharge of a precedent debt, or the actual payment of such articles, prevent such obligation from ever becoming a money demand, but only subjects the promisor to damages for failing to comply with his contract to deliver.

A delivery may be symbolical, or a part for the whole. (Id. pages 530 and 531.) In this case, the plaintiff, recognizing his obligation to hunt, mark, and brand the cattle he had purchased of defendant's intestate (Atterbury), proceeded to the range, hunted and appropriated nineteen head of the cattle, and gave credit on the obligation for their value at the stipulated price—six dollars per head.

*Throckmorton & Brown,* for the appellee.

OGDEN, J. In 1861, Allen Atterbury purchased of appellee certain lots or tracts of land, and in part payment for the same executed his promissory note for six hundred dollars, payable in stock cattle; and by the terms of the note, appellee was to hunt the cattle of the stock of Atterbury within the counties of Fannin and Hunt, and to mark and brand the same, sufficient to pay the note. Appellee in his petition below claims that the note is due, that he has received but a small number of the

stock cattle, and prays for judgment for the amount due on the note, and for the foreclosure of the vendor's lien.

The note sued on is very peculiar in its terms. By it, the maker binds himself to pay, on or before the 1st day of June, 1862, to J. M. Biggerstaff, six hundred dollars in stock cattle. This certainly was not a present sale, in which the property in the cattle passed to the payee of the note; and notwithstanding Biggerstaff was to hunt, mark, and brand the cattle at his own expense, yet the property in the cattle remained in Atterbury, until they were marked and branded and turned over to the payee of the note; and the maker of the note could, at any time before the final delivery, have refused to perform his promise to sell, or rather to pay the note in cattle, and have prohibited the holder of the note from marking and branding any portion of said cattle.

But Atterbury was not bound to gather and deliver the cattle, as, by the terms of the note, that was to be done by Biggerstaff. If, therefore, there was a sufficient number of the particular stock within the counties specified, to pay the note, and further, if Atterbury interposed no obstacles to the gathering of a sufficient number to pay the note, then he or his estate cannot now be held responsible for the amount due on said note—at least in anything else but cattle at the stipulated price. But if there was not a sufficient number of the stock within the counties specified to pay the note, and if Biggerstaff gathered all of the specified stock running in the counties of Fannin and Hunt, which could have been gathered by the use of ordinary diligence, then he was entitled to a monied judgment for any balance due on the note, after giving credit for the number of cattle he did actually get.

The exceptions taken to appellee's petition, and the evidence offered in relation to the proper meaning of the term "my "stock," as used in the note sued on, can have no influence in the equitable determination of this cause, as there was no conflict in the pleadings or evidence on the trial below in regard to the wording and meaning of the note; and it was proven be-

yond a doubt, by the plaintiff and defendant, that both parties understood " my stock " to mean the cattle branded with an X.

In regard to the number of that particular stock of cattle then in Fannin and Hunt counties, the testimony was somewhat conflicting; but we think the plaintiff below proved pretty conclusively that he had used due diligence to collect all the cattle of that particular stock which were running in the two counties; and it was also pretty clearly proven that, at that time, there was not a sufficient number of that stock in Fannin and Hunt counties to pay the note.   At least, we think the jury were authorized in coming to that conclusion, and the court, by its charge to the jury, presented the question of due diligence very fairly, and at least as favorably for the defendant as could have been demanded legally.   And upon a careful consideration of the pleadings, together with the testimony adduced on the trial of this cause, and the law applicable to the facts proven, we are of the opinion that substantial justice has been done, and the judgment is affirmed.

                                                        Affirmed.